EXXON CORPORATION,
Plaintiff-Appellee,

v.

Michael L. FISCHER, et al.,
Defendants-Appellants.

No. 85–6572.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 5, 1986.

Decided Jan. 7, 1987.

Donna R. Black, Los Angeles, Cal., Sarah Chasis, New York City, for plaintiff-appellee.

Peter H. Kaufman, San Diego, Cal., Nancy S. Marks, Boston, Mass., Robert Venning, San Francisco, Cal., for defendants-appellants.

Before WALLACE, BOOCHEVER and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge.

We review a declaratory judgment in favor of Exxon entered against the individual members and executive director of the California Coastal Commission (Coastal Commission). That judgment declared invalid the Coastal Commission's objection to Exxon's proposed exploratory drilling program.

### Facts

The Coastal Zone Management Act (CZMA) defines "coastal zones" as those non-federal lands near the shorelines of the states and extending to the limits of the territorial sea. 16 U.S.C. § 1453(1) (1982). The territorial sea extends three miles seaward from the California coast. Submerged land beyond the territorial sea over which the United States claims jurisdiction constitutes the outer continental shelf (OCS). The coastal zone is within the state; the OCS is under federal jurisdiction. 43 U.S.C. §§ 1301(b), 1302, 1311 (1982).

Congress, through the CZMA, encouraged states to develop comprehensive management plans for their coastal zones. 16 U.S.C. § 1454 (1982). But Congress recognized that activity in the OCS might affect the state's coastal zones; it included within the CZMA a mechanism for resolving conflicts between state coastal zone plans and federally-approved OCS activities. Section 1456(c)(3) requires any applicant for a federal license to certify that proposed OCS activities that affect "any land use or water use" in a state's coastal zone will conform to that state's management program.

A state may object to this certification if it finds the licensee's planned activity would be inconsistent with its program. A licensee may in turn appeal to the Secretary of Commerce, and ask him to override the objection on the grounds that its plan is "consistent with the objectives of [the CZMA] or is otherwise necessary in the interest of national security." *Id.* at (B)(iii).

On January 24, 1983, Exxon successfully bid for the right to explore for oil in the OCS opposite Santa Barbara, California. Following the procedure described above, it submitted to the Department of the Interior a plan proposing three exploratory wells (labeled A, B and C). Recognizing that a small part of its plan (e.g., transport to and from the wells) would affect the coastal zone, Exxon also submitted a "consistency certificate." This certificate asserted that these comparatively minor effects of the plan would not violate California's Coastal Zone Management Program (CZMP). The Interior Department reviewed the plan and then, pursuant to the CZMA, sent it to the Coastal Commission, together with Exxon's consistency certificate.

The Coastal Commission began to review Exxon's plan for consistency with the state's CZMP. After public hearings, the Commission voted on July 27, 1983, to object to the plan as inconsistent with the CZMP. Exxon appealed this decision to the Secretary, but voluntarily dismissed the appeal in November 1983 when the Commission agreed to let Exxon drill well A and to reconsider its objections to wells B and C.

After drilling well A, Exxon recertified that its plan was consistent with the CZMP. The Coastal Commission again objected, relying on the disruptive effect this drilling would have on the thresher shark fishery during the fishing season, which runs from May through early November. The Commission allowed Exxon to drill during the off-season (Thanksgiving through April) but Exxon, citing cost and scheduling problems, refused.

Exxon did announce at a public hearing before the Coastal Commission that it no longer intended to drill well C, but the Commission decided that even well B alone would violate the CZMP. Exxon again appealed to the Secretary on March 9, 1984. It also brought this action against the

Coastal Commission in district court. In the district court action, Exxon sought a declaration that the Commission's objection to the drilling of well B violated the CZMA because the drilling would not affect any land or water use within California's coastal zone.

On November 14, 1984, the Secretary dismissed Exxon's appeal. The Secretary found, pursuant to the four-part test established in the applicable regulation, 15 C.F.R. § 930.121 (1986), that well B was not consistent with the CZMA's purposes. Although it would further the national goal of energy self-sufficiency, although its contribution to the national interest would outweigh its effects on the coastal zone and although it would not violate the Clean Air or Clean Water Acts, the Secretary sustained the Coastal Commission's objections because he found that drilling during the off-season was a reasonably available alternative. Exxon did not seek review of the Secretary's decision.

About a year later, on October 10, 1985, the district court entered summary judgment for Exxon, holding that the Commission had violated the CZMA by objecting to aspects of the plan that did not affect the coastal zone.

**Contentions of the Parties**

Appellants level several attacks on the judgment below. They argue that the eleventh amendment bars a federal court from considering Exxon's case; that Exxon is precluded from raising its objection because it already did so before the Secretary; and that the Coastal Commission was perfectly within its rights under the CZMA in objecting to Exxon's plan because of the harmful effects the drilling might have on an important coastal industry.

Exxon vigorously contests each point. It argues that the district court had jurisdiction because the case raises a question of federal law; that the Secretary never resolved the contested interpretation of the CZMA in his review of the Commission's objection; and that the CZMA simply does not allow what it characterizes as "econom-ic protectionism" by California in favoring fishermen over oilmen.

**Discussion**

A. *The Eleventh Amendment*

Appellants contend that the eleventh amendment, as interpreted in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), precludes assertion of federal jurisdiction in this case. In *Pennhurst,* the Supreme Court held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id.* at 121, 104 S.Ct. at 919. That, appellants contend, is exactly what Exxon is claiming here.

■ Appellants misunderstand Exxon's position. Exxon is not disputing the Commission's interpretation of the state's CZMP; it is disputing the Commission's interpretation of the federal CZMA, particularly its conclusion that the CZMA allows California to block Exxon's plan in order to protect its commercial thresher shark industry. Exxon is claiming that the Commission's adherence to the CZMP violated the CZMA, a federal law. The eleventh amendment does not apply.

B. *The Secretary's Decision*

Appellants argue that the Secretary's decision estops Exxon from arguing that well B would not "affect land uses" in California's coastal zone under section 1456. Exxon argues that the Secretary's decision is irrelevant to this suit. It contends that the Secretary was ruling on a wholly different issue, namely Exxon's claim that its plan for drilling well B was "consistent with the objectives of" the CZMA. Exxon argues that the suit before us is not another effort at proving that its plan is consistent with the CZMA's objectives, but an attempt to show that the Commission's objection was invalid from the start.

■ Whether the Secretary's decision should be given preclusive effect hinges on three factors: (1) whether the Secretary was acting in a judicial capacity; (2) wheth-

er the issue presented to the district court was actually litigated before the Secretary; and (3) whether its resolution was necessary to the Secretary's decision. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 n. 5 (1979); *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966); *see also* Restatement (Second) of Judgments §§ 27, 83.

■ The district court concluded that the Secretary was not acting in a judicial capacity when he reached his decision, primarily because the CZMA required "the Secretary to assess and then balance costs and benefits as would a policy maker." *Exxon Corp. v. Fischer*, No. CV 84–2362 PAR, slip op. at 28 (C.D.Cal. Oct. 15, 1985). It is true that the law the Secretary was applying required a weighing of cost and benefits. And it is also true that he solicited comments from non-parties. But Exxon was given a hearing, with a full opportunity to present its case and attempt to rebut opposing evidence. K. Davis, 4 *Administrative Law* 53–54, 79 (2d ed. 1983) (key criterion is opportunity to present and rebut evidence and argument). Exxon took full advantage of these procedures by, for example, introducing its own thresher shark catch statistics for the area where it wanted to drill. *See* Secretary of Commerce, *Decision and Findings in the Consistency Appeal of Exxon Company U.S.A. to an Objection From the California Coastal Commission* 13 (Nov. 14, 1984) (hereinafter Sec'y Dec.). Equally important, the Secretary made his findings and conclusions after receiving and carefully considering Exxon's "Supporting Statement" which, like an appellate brief, contained Exxon's arguments and responses with appropriate references to the record compiled before the Coastal Commission. *Id.* at 7–8. Moreover, the point here in dispute is one of law; it did not call for the exercise of policy judgment. We conclude that the Secretary was acting in a judicial capacity insofar as he addressed the issue presented to the district court.

■ We also conclude that the issue was actually litigated before the Secretary. Exxon squarely presented the question of whether California's objection was proper under the CZMA. *See* Sec'y Dec. at 12 ("appellant maintains ... that such drilling does not affect 'land or water uses' of the coastal zone"). Moreover, the Secretary resolved the issue adversely to Exxon. For one thing, the Secretary himself raised the issue through his very broad construction of the phrase "natural resources of the coastal zone." *Id.* at 11. His decision reflects both parties' positions on this point, *id.* at 12–13, and concludes that the effects will not be substantial. *Id.* at 14. Later in his decision, the Secretary notes that he found the effects of the drilling on coastal zone uses would be limited. *Id.* at 18.

■ Finally, a finding on this issue was necessary to the Secretary's decision. The Secretary noted that "in order to accord full effect to the statutory provisions quoted above [16 U.S.C. §§ 1456(c)(3)(B), 1453(10) and (18)], I will consider the adverse effects of the activity on coastal resources and land and water uses, as defined by the CZMA...." Sec'y Dec. at 12. The Secretary then proceeded to weigh the benefits of Exxon's proposed plan against the impact it would have. He found the effects of Exxon's drilling on "land and water uses in the coastal zone ... not substantial." *Id.* at 14. Nevertheless, he determined that they could be avoided altogether if Exxon were to drill only from Thanksgiving through April. On that basis, he sustained the Coastal Commission's challenge. The Secretary's weighing process necessarily rested on a determination that the state's objection was valid under the CZMA and that the interests it sought to protect were encompassed by the statute. Otherwise, there was nothing to which the Secretary could have legitimately subordinated Exxon's interest.

We do not decide whether Exxon was required to submit this question to the Secretary first, or whether it could have bypassed secretarial review of the issue by going directly to the district court. We

hold only that Exxon, having litigated the issue before the Secretary, cannot relitigate the issue in a collateral proceeding. *See Callanan Road Improvement Co. v. United States,* 345 U.S. 507, 513, 73 S.Ct. 803, 806, 97 L.Ed. 1206 (1953); *McCulloch Interstate Gas Corp. v. FPC,* 536 F.2d 910, 913 (10th Cir.1976). Exxon's proper course was to seek judicial review pursuant to the Administrative Procedure Act. *See* 15 C.F.R. § 930.130(d) (1986).

Since this is Exxon's only basis for arguing that the Commission violated the CZMA in objecting to well B, we must reverse the district court's judgment.*

### Conclusion

The district court's judgment is reversed and the case is remanded for entry of judgment in favor of defendants.

---

* We do not reach Exxon's contention that the Commission was really engaging in a form of economic protectionism not permitted by the CZMA.