**WEST COAST TRUCK LINES, INC., an Oregon Corporation, Plaintiff–Appellant,**

v.

**AMERICAN INDUSTRIES, INC., dba American Steel, an Oregon Corporation, Defendant–Appellee.**

No. 88–15518.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1989.

Decided Jan. 8, 1990.

---

Miles L. Kavaller, Beverly Hills, Cal., for plaintiff-appellant, West Coast Truck Lines, Inc.

Gary C. Borchard, Redding, Cal., for defendant-appellee, American Industries, Inc.

Before WALLACE, PREGERSON and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

West Coast Truck Lines, Inc., (West Coast) appeals from the judgment dismissing without prejudice its action against American Industries, Inc. (American Industries) to collect undercharges. The district court based its dismissal on the lack of subject matter jurisdiction to review a ruling by the Interstate Commerce Commission (ICC). The ICC ruled that the collection of undercharges that are the subject of the controversy alleged in the complaint would be an unreasonable practice in violation of 49 U.S.C. § 10701(a).

We must decide whether the ICC's ruling was a final, appealable order and, if so, whether West Coast lost its right to a review of the merits of the ICC's declaration because of its failure to file a timely, direct appeal of that ruling to this court. We conclude that the ruling by the ICC was a final and appealable order that resolved the merits of the controversy before the district court. We reverse the dismissal of the action and instruct the district court to enter summary judgment on the merits for American Industries because the ICC ruling has provided American Industries with an unassailable defense to the issues raised in West Coast's complaint.

## PROCEDURAL POSTURE

West Coast, formerly an interstate motor carrier, initiated this action by filing a complaint on January 26, 1987, to collect undercharges for the transportation of steel in 1984. West Coast sought to recover, as damages, the difference between the rate it filed with the ICC and the lower figure it negotiated with and collected from American Industries. The complaint alleges that the undercharges total $5,328.90.

In its responsive pleadings, American Industries denied that any additional charges were owed to West Coast. American Industries also asserted that, because collection of undercharges constituted an unreasonable practice under 49 U.S.C. § 10701, West Coast should be equitably estopped from collecting them.

On June 17, 1987, American Industries filed a motion to stay the district court

proceedings and to refer the issue of unreasonable practice to the ICC. The district court declined to use the formal referral process, but instead issued an order on July 17 staying the proceedings to permit American Industries to file a petition for a declaratory order before the ICC.

On August 26, 1987, American Industries filed a petition for a declaratory order with the ICC. American Industries requested that the ICC determine whether West Coast's attempt to collect undercharges constituted an unreasonable practice.

The ICC issued its ruling on the petition on April 25, 1988. The ICC declared that, based on the facts in the record before it, it would be an unreasonable practice to permit West Coast to collect undercharges four years after the shipments. On July 5, 1988, the district court issued an order vacating the stay and dismissing the action without prejudice on the ground that it lacked subject matter jurisdiction to review the ICC's order.

West Coast filed a motion in the district court to alter, amend, or vacate the order dismissing this action. West Coast contended that the order staying the proceedings constituted a referral to the ICC. West Coast argued that the district court had jurisdiction to review the ruling under 28 U.S.C. § 1336(b). The district court rejected this argument and denied the motion. West Coast filed this timely appeal from the judgment of the district court.

## DISCUSSION

### I. *Jurisdiction*

■ We review the dismissal of an action for lack of subject matter jurisdiction *de novo* without deference to the district court's rulings on questions of law. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). We must accept the district court's factual findings on jurisdictional issues unless they are clearly erroneous. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir.1989).

West Coast relied on 49 U.S.C. §§ 10701, 10741, 10761 and 10762 and 28 U.S.C.

§ 1337, in support of its claim for the collection of the difference between the amount it had previously collected and the interstate motor carrier freight charges required by its tariff on file with the ICC. The district court had jurisdiction over West Coast's complaint at the time it was filed because a claim for undercharges arises under federal law. *See* 28 U.S.C. § 1331 (1982); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 533–34, 103 S.Ct. 1343, 1343–44, 75 L.Ed.2d 260 (1983) (per curiam) (upholding jurisdiction over an action to collect a filed rate). Because dismissal of the action was a final order, we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

### A. Referral

West Coast contends that the district court had jurisdiction to either accept or reject the ICC's ruling because the parties and the ICC treated the district court's stay of the proceedings as a referral. Because referral to the ICC has significant procedural consequences, a district court's stay of an action to allow a parallel ICC action to proceed will not be treated as a referral under 28 U.S.C. § 1336(b) unless the district court clearly implies or explicitly states that it is referring the case to the ICC. *Seaboard System R.R. v. United States,* 794 F.2d 635, 639 (11th Cir.1986); *City of New Orleans v. Southern Scrap Material Co.,* 704 F.2d 755, 759 (5th Cir. 1983). A referral gives the district court exclusive jurisdiction "to enforce, enjoin, set aside, annul, or suspend" the resulting ICC order. 28 U.S.C. § 1336(b) (1982). In the instant matter, the district court explicitly stated that it "declined to use the formal referral procedure but rather required defendant to file its petition directly before the ICC." The record is quite clear that there was no referral to the ICC of the issue of unreasonable practices.

### B. Primary Jurisdiction of the ICC over Unreasonable Practice Claims

Although it declined to use the referral process, the district court properly stayed West Coast's action provided that the ICC

had primary jurisdiction to determine whether West Coast's collection of undercharges would be an unreasonable practice. The doctrine of primary jurisdiction provides that courts should refer certain claims to administrative agencies for initial determination. *United States v. Western Pac. Ry. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956) (when a claim requires resolution of issues within the special competence of an administrative body, "the judicial process is suspended pending referral of such issues to the administrative body for its views"). West Coast does not dispute that the ICC has primary jurisdiction to determine issues of rate reasonableness. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976) (primary jurisdiction has been applied when an action questions the validity of a rate or practice included in a tariff filed with the Civil Aeronautics Board); *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 62–70, 77 S.Ct. 161, 164–68, 1 L.Ed.2d 126 (1956) (issues of tariff construction and tariff reasonableness are initially matters for ICC determination); *Great N. Ry. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922) ("Whenever a rate, rule, or practice is attacked as unreasonable ..., there must be preliminary resort to the Commission.").

## C. Statute of Limitations

■ West Coast argues that, in the absence of a referral, the ICC's authority to determine issues of rate reasonableness must derive from 49 U.S.C. § 11705(b)(3). Section 11705(b)(3) provides that "[a] common carrier providing transportation or service subject to the jurisdiction of the Commission ... is liable for damages resulting from the imposition of rates for transportation or service the Commission finds to be in violation of this subtitle." 49 U.S.C. § 11705(b)(3) (1982). West Coast argues that the petition American Industries filed with the ICC fails to meet the requirements of 49 U.S.C. § 11705(c), which permits the filing of complaints with the ICC to enforce liability against common carriers. Complaints under § 11705(c) must be filed within two years after the claim accrues, 49 U.S.C. § 11706(c)(2) (1982), and West Coast argues that the statute of limitations has run.

West Coast bases its statute of limitations claim on 49 U.S.C. § 11706(g), which states that "[a] claim [filed pursuant to § 11705(b)(3)] related to a shipment of property accrues ... on delivery or tender of delivery by the carrier." 49 U.S.C. § 11706(g) (1982). Because all of the shipments at issue in American Industries' petition were delivered at least two years before the petition was filed, West Coast reasons, these shipments are time-barred from ICC consideration.

West Coast's reliance on the statute of limitations is misguided. "The statute of limitations in the Interstate Commerce Act, 49 U.S.C. § 11706, refers only to actions seeking payment of money, which [a request for a declaration of unreasonableness] would not, technically anyway, be." *Western Transp. Co. v. Wilson & Co.*, 682 F.2d 1227, 1232 (7th Cir.1982). It has long been established that, in the referral context, the statute of limitations does not "bar reference to the Commission of questions raised by way of defense in suits which are themselves timely brought." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 71, 77 S.Ct. 161, 169, 1 L.Ed.2d 126 (1956). We see no reason why the statute should bar an independent petition either: "To use the statute of limitations to cut off a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation." *Id.* at 72, 77 S.Ct. at 169; *see also Western Transp. Co.*, 682 F.2d at 1232 (applying *Western Pacific* to independent petitions). Were this not the rule, a plaintiff such as West Coast "could bar the shipper's recourse to the Commission simply by delaying its suit until the limitations period had almost run." *Western Transp. Co.*, 682 F.2d at 1232. American Industries' petition met the requirements of 49 U.S.C. § 11705, and the district court properly stayed the proceedings until the ICC made its ruling.

## II. *Effect of the ICC Ruling*

### A. Reviewability

■ West Coast contends that the ICC's ruling was reviewable by the district court. Under the Administrative Procedure Act, 5 U.S.C. § 704, final agency actions are reviewable by the federal courts. The term "agency action" encompasses an agency's interpretation of the law. *Ciba–Geigy Corp. v. United States Envtl. Protection Agency*, 801 F.2d 430, 435 (D.C.Cir.1986). Under the Hobbs Act, "a proceeding to enjoin or suspend ... [an] order of the Interstate Commerce Commission shall be brought in the court of appeals," 28 U.S.C. § 2321(a) (1982); the court of appeals has exclusive jurisdiction to determine the validity of "all ... final orders of the Interstate Commerce Commission," 28 U.S.C. § 2342(5) (1982). The Administrative Procedure Act defines an "order" as "the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6) (1982).

West Coast first argues that the ICC's ruling does not qualify as a declaratory order under 5 U.S.C. § 554(e). Section 554(e) authorizes the ICC to "issue a declaratory order to terminate a controversy or remove uncertainty." 5 U.S.C. § 554(e) (1982). West Coast characterizes the ICC's ruling as an advisory opinion issued as a matter of convenience and not intended to have any legal effect. This argument lacks merit. American Industries' petition to the ICC requested a declaration of law to resolve an actual controversy with West Coast over alleged undercharges. West Coast's ability to prevail on its claim for undercharges depended entirely on a favorable ICC ruling. *See* 49 U.S.C. § 10701(a) (1982) ("A rate ..., rule, or practice ... must be reasonable."); *id.* § 10704(b)(1)(A) ("When the Commission decides that a rate charged or collected by ... a motor common carrier ... or practice of that carrier, does or will violate this chapter, the Commission shall prescribe the ... practice to be followed."). Because the ICC's ruling resolved an actual controversy between the parties, it meets the requirements of section 554(e). It also falls within the broad definition of "order" under the Administrative Procedure Act. 5 U.S.C. § 551(6) (1982); *see Pennsylvania R.R. Co. v. United States*, 363 U.S. 202, 205, 80 S.Ct. 1131, 1133, 4 L.Ed.2d 1165 (1960) (an ICC determination that a rate is unreasonable is "by no means an 'advisory opinion,' ... whether its proceeding follows referral by the court or originates with the Commission").

West Coast also argues that the ICC's ruling was not final and appealable to the court of appeals, and therefore the district court had the authority to review the ICC's findings. Determination of finality is a two-step process, "requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149–50, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). The first step asks whether the order represents " 'a terminal, complete resolution of the case before [the agency],' " *Intercity Transp. Co. v. United States*, 737 F.2d 103, 106 (D.C.Cir.1984) (quoting *National Treasury Employees Union v. FLRA*, 712 F.2d 669, 671 (D.C.Cir.1983)) (bracketed material in *Intercity Transp. Co.*), so that "judicial review will not disrupt the orderly process of adjudication," *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970). Because the ICC has made a final determination that attempted recovery of motor carrier undercharges is an unreasonable practice in this factual setting, the first step is satisfied.

The second step considers whether the agency's determination has a " 'direct and immediate ... effect on the day-to-day business' " of the parties. *FTC v. Standard Oil Co.*, 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980) (quoting *Abbott Laboratories, supra*, 387 U.S. at 152, 87 S.Ct. at 1517). This "direct and immediate effect" means that "rights or

obligations have been determined or [that] legal consequences will flow from the agency action." *Rederiaktiebolaget Transatlantic, supra,* 400 U.S. at 71, 91 S.Ct. at 209; *see also Pennsylvania R.R. Co., supra,* 363 U.S. at 205, 80 S.Ct. at 1133 ("[A]n [ICC] order that determines a 'right or obligation' so that 'legal consequences' will flow from it is reviewable." (citation omitted)).

West Coast argues that the ICC finding has no legal effect. First, it notes that the ICC has no authority to order a waiver of motor carrier undercharges and argues that the ICC cannot enforce its declaration retroactively. While this is true, as discussed above, the ICC does have primary jurisdiction to enter a final appealable order declaring an attempt to collect undercharges an unreasonable practice. Thus the fact that the ICC cannot enforce its declaration is immaterial in determining finality.

Second, West Coast argues that shippers cannot assert unreasonableness as a defense in carrier suits to recover filed tariff rates. West Coast relies on *In re Caravan Refrigerated Cargo, Inc.,* 864 F.2d 388 (5th Cir.1989), in support of this argument. In that matter, the Fifth Circuit held that "[a] shipper that pleads unreasonableness as a defense cannot prevent enforcement of the filed tariff doctrine." *Id.* at 392. In *Caravan,* the Fifth Circuit upheld a district court's *refusal* to *refer* a case to the ICC to determine whether collection of undercharges would be an unreasonable practice; the Fifth Circuit reasoned that the filed rate doctrine—the rule that the applicable rate is the rate that is included in the tariff filed with the ICC—made such a determination unnecessary. *Id.*

We are not persuaded by the Fifth Circuit's reasoning. The filed rate doctrine is not absolute; the filed rate must be applied by the ICC "unless it is found by the Commission to be unreasonable." *Louisville & Nashville R.R. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). Under the ICC's declaration in response to American Industries' petition, an attempt by West Coast to collect its undercharges

in the action before the district court would violate the unreasonable practice provisions of 49 U.S.C. § 10701(a). The legal effect of the ICC's interpretation of unreasonable practices regarding an attempt to collect undercharges is to foreclose West Coast's right to recover its filed rate. Until the order was reviewed by an appellate court, the parties were bound by the ICC's determination. *See Atchison, Topeka & Santa Fe Ry. Co. v. ICC,* 687 F.2d 912, 918 (7th Cir.1982) (failure to seek appellate review bars a challenge to the validity of an ICC order). The ICC order was final and appealable.

A person who seeks appellate review of an ICC order must file a notice of appeal within sixty days of the entry of the ruling. 28 U.S.C. § 2344 (1982). This time limitation is jurisdictional and cannot be modified by judicial action. *California Ass'n of the Physically Handicapped, Inc. v. FCC,* 833 F.2d 1333, 1334 (9th Cir.1987). The ICC order was entered on April 25, 1988. West Coast did not file a notice of appeal from the ICC's order. Thus, this court is barred from reviewing the merits of the ICC's order.

**B.   Preclusive Effect**

■ Because West Coast failed to file a notice of appeal in this court from the ICC's declaration that West Coast's attempt to collect undercharges is an unreasonable practice, we must determine whether the district court was precluded from reaching the merits of West Coast's claim. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Whether an administrative agency's declaration should be given preclusive effect hinges on three factors: "(1) whether the [agency] was acting in a judicial capacity; (2) whether the issue presented to the district court was actually litigated before the [agency]; and (3) whether its resolution was neces-

sary to the [agency's] decision." *Exxon Corp. v. Fischer*, 807 F.2d 842, 845–46 (9th Cir.) (applying these factors to a decision by the Secretary of Commerce) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *Utah Constr. & Mining Co.*, 384 U.S. at 421–22, 86 S.Ct. at 1559–60), *amended*, 817 F.2d 1429 (9th Cir.1987); *see also Plaine v. McCabe*, 797 F.2d 713, 718–19 (9th Cir.1986) (applying the factors to a state administrative agency decision).

■ By conducting a hearing, allowing the parties to present evidence and ruling on a dispute of law, the ICC acted in a judicial capacity. *Fischer*, 807 F.2d at 846. American Industries' petition presented the issue of the reasonableness of West Coast's attempt to collect the alleged undercharges to the ICC. The ICC concluded that, under the facts and circumstances of this case, the practice was unreasonable. The validity of the ICC's declaratory ruling cannot be attacked collaterally. *See Callanan Road Improvement Co. v. United States*, 345 U.S. 507, 512, 73 S.Ct. 803, 806, 97 L.Ed. 1206 (1953) (holding that an ICC order may not be attacked collaterally). Preclusion of the opportunity to relitigate the issue of unreasonableness has provided American Industries with an unassailable defense to West Coast's action. The district court dismissed this action for lack of subject matter jurisdiction. That ruling was erroneous. The district court had federal question jurisdiction over West Coast's complaint for payment of the undercharges. *Jordan K. Rand*, 460 U.S. at 533–34, 103 S.Ct. at 1343–44. The doctrine of res judicata bars any recovery as a matter of law because of the ICC's determination of unreasonableness. Accordingly, the district court should have granted summary judgment in favor of American Industries.

## CONCLUSION

The district court correctly stayed West Coast's action to permit the ICC to exercise its primary jurisdiction to declare whether West Coast's attempt to collect undercharges was an unreasonable practice. The ICC's determination of unreasonableness precludes a judgment in favor of West Coast. The dismissal of this action by the district court is reversed and the action is remanded with instructions to enter summary judgment in favor of American Industries.