704 A.2d 473

**Joseph Walter REID**

v.

**STATE of Maryland.**

**No. 554, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Jan. 12, 1998.

130

Scott Robinson (Mallon A. Snyder, on the brief), Rockville, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Scott L. Rolle, State's Atty. for Frederick County, Frederick, on the brief), for appellee.

Argued before MOYLAN, DAVIS and SALMON, JJ.

SALMON, Judge.

On June 25, 1996, Joseph Walter Reid received traffic citations for: (1) negligent driving (§ 21–901.1(b) of the Transportation Article of the Maryland Code (1992 Repl.Vol., 1994 Cum.Supp.))[1]; (2) parking vehicle on a highway outside a business or residential district (§ 21–1001(a)); (3) driving, attempting to drive with alcohol in blood in violation of court order (§ 16–113(g)); and (4) driving while intoxicated and/or under the influence of alcohol or drugs (§ 21–902). Reid refused to take a chemical test to determine his blood/alcohol level on the evening he received the tickets. As permitted by section 16–205.1(f), Reid requested an administrative hearing to show cause why his driver's license or privilege should not be suspended for refusal to take an alcohol concentration test. After conducting a hearing, an administrative law judge (ALJ) found, among other things, that Reid had not been properly advised of the consequences of his failure to take the chemical test. She also ruled that Mr. Reid had not consumed alcohol on the day he was asked to take the test. Penultimately, the ALJ ruled that appellant's license should not be suspended.

■ After the ALJ's ruling, appellant filed a motion to dismiss the traffic charges. He contended that the State was collaterally estopped from proceeding with those charges because the ALJ had made a "final determination" regarding issues that were determinative as to the criminal matters.

---

1. In this opinion, all references to a statute refer to the Maryland Transportation Article of the Maryland Code.

The trial judge (Dwyer, J.) denied the motion to dismiss, and appellant immediately appealed,[2] raising one issue, viz:

Whether the [c]ircuit [c]ourt was precluded by collateral estoppel from proceeding with criminal charges after an Administrative Law Judge made affirmative findings of fact in the [a]ppellant's favor regarding the same incident from which the criminal charges arose[.]

## BACKGROUND

Appellant, at all times here pertinent, was a self-employed tow-truck driver who had a commercial driver's license. On June 25, 1996, he was dispatched from Kensington, Maryland, to answer a call in Frederick County. Appellant's wife, due to the "suspicious nature" of the call, drove another vehicle and followed her husband. While in Frederick County, appellant was issued several traffic citations by Maryland State Trooper Timothy Hagy.

At the administrative hearing, the ALJ made the following "Findings of Facts and Decision":

Trooper Hagy appeared and testified that he had reasonable grounds and that he did *not* advise him [appellant] of the sanction of one year and possible disqualification. The officer stated the car was partially blocking [the] road. His [appellant's] wife testified that she and petitioner have a towing business and she has been married to him for 10–11 years. On the particular night in question she had followed him due to a suspicious call and saw her husband pulled off [the] road with emergency flashers on. She testified that he has not had a drink in 10 years. The dispatcher also testified that she had sent petitioner on a call and that he responded. The dispatcher testified that she had been in touch with the petitioner. Both witnesses testified that he had not been drinking. Mr. Reid admitted that he had gotten angry and was not totally cooperative.

---

**2.** An immediate appeal can be taken from a pre-trial order denying a motion to dismiss on the grounds of double jeopardy. *Bowling v. State*, 298 Md. 396, 401 n. 4, 470 A.2d 797 (1984) (citations omitted).

I find the witnesses and Mr. Reid [appellant] credible in that he had not been drinking on the day in question; I find that he was pulled over on the shoulder and was not driving[;] I find that the officer did not advise Mr. Reid of the life-time suspension of a CDL [commercial driver's license] that could occur if he refused the test[;3] I find that Mr. Reid has[,] of his own will[,] decided to keep the alcohol restriction on his license as a reminder of his past record[;] therefore[,] based on these findings[,] he does not fall under 16.205.1, and I must take no action.—Dismiss.[4]

The Department of Motor Vehicles took no further action against appellant as a result of his failure to submit to an alcohol test.

The criminal case involving the four citations against appellant was set for January 27, 1997, in the Circuit Court for Frederick County. On that day, appellant made a motion to dismiss on the grounds of collateral estoppel. The trial was postponed and the motion was heard on March 24, 1997, at

---

3. Section 16–205.1(f)(8)(vi) reads:
 A disqualification imposed under subparagraph (ii) or (iii) of this paragraph shall be for a period of 1 year for a first offense, 3 years for a first offense which occurs while transporting hazardous material required to be placarded, *and life for a second or subsequent offense which occurs while operating or attempting to operate any commercial motor vehicle.*
 (Emphasis added.)

4. Appellant's counsel, in the lower court, related what happened before the ALJ:
 [S]everal things happened in this case, Mr. Reid testified that he'd not been drinking, the officer that he testified he had been drinking. The trooper testified he smelled an odor of alcohol and that my client admitted to four rum and cokes. I put on testimony of many witnesses to show that he had not had a drop to drink since he left Kensington, Maryland, and that they have him on call because he's a tow truck driver. That by the time they dispatched him and sent him to where he was stopped here in Frederick County that he could not have had anything to drink. Trooper further testified that there were no alcoholic beverages and/or mixer in the vehicle. Based upon the facts and testimony in the case the Administrative Law Judge considered everything in this case and determined that he'd had no alcohol on the date of the occurrence. That was one of the issues because of the alcohol restriction on the license.

which time Judge Dwyer denied the motion. Trial was rescheduled for May 19, 1997. Appellant noted this interlocutory appeal on April 7, 1997.

## ANALYSIS

Both the Fifth Amendment of the Federal Constitution, reaching State prosecutions via the Fourteenth Amendment, and Maryland common law provide that no person shall be put in jeopardy twice for the same offense. Moreover, it is established under both the Constitution and Maryland common law that the doctrine of collateral estoppel is embodied in the double jeopardy prohibition. The collateral estoppel doctrine operates to a preclusive end, so that when an issue of ultimate fact has been determined once by a valid and final judgment, that issue cannot be litigated again between the same parties in a future action.

*Gibson v. State,* 328 Md. 687, 693, 616 A.2d 877 (1992) (citations omitted).

Section 16–205.1(k) provides:

*Effect of criminal charges.*—(1) The determination of any facts by the Administration is independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence.

(2) The disposition of those criminal charges may not affect any suspension imposed under this section.

In this case, appellant claims that the ALJ made two findings as to "ultimate issues" that bring into play the doctrine of collateral estoppel, viz: (1) "that [a]ppellant was not driving or attempting to drive, and [ (2) ] that the [a]ppellant had not been drinking on the day in question...." According to appellant, the collateral estoppel doctrine precludes the State from prosecuting him for all criminal charges now pending except the charge of parking a vehicle on a highway outside a business or residential district. Appellant maintains that the enactment of section 16–205.1(k) is merely an "attempt to circumvent the doctrine of collateral estoppel," which must fail because it violates the United States Constitu-

tion. The State counters that section 16–205.1(k) is constitutional, that section 16–205.1(k) makes the judgment of the ALJ non-final, and that, in turn, makes the collateral estoppel doctrine inapplicable. We need not decide the constitutional issue because, even if section 16–205.1(k) had never been enacted, the doctrine would not bar the State from proceeding against appellant for the three pending traffic charges.

■ "The effect of collateral estoppel, when that doctrine is applicable, is that of issue preclusion (meaning precluding deciding issue[s] of ultimate fact)." *Burkett v. State*, 98 Md.App. 459, 465, 633 A.2d 902 (1993), *cert. denied*, 334 Md. 210, 638 A.2d 752 (1994). To decide in this case if the doctrine of collateral estoppel has preclusive effect, we must determine: (1) whether the ALJ was acting in a judicial capacity; (2) whether the issue presented to the Circuit Court for Frederick County was actually litigated before the ALJ; and (3) whether its resolution was necessary to the ALJ's decision. *See Batson v. Shiflett*, 325 Md. 684, 701, 602 A.2d 1191 (1992) (citing the test first enunciated in *Exxon Corp. v. Fischer*, 807 F.2d 842, 845–46 (9th Cir.1987)). If the answer to any of these three questions is "No," then the collateral estoppel doctrine is inapplicable. Here, there is no question that the ALJ was acting in her judicial capacity when she made her findings. Accordingly, we will focus our inquiry on the second and third prongs of the collateral estoppel test.

## WHAT WAS LITIGATED?

The record of what was said and done before the ALJ in this case is sparse. No transcript of the proceedings before the ALJ has been provided to us, and it seems likely that none exists. We have only the ALJ's handwritten "Findings of Facts and Decision," together with the representations of appellant's trial counsel that were made to Judge Dwyer. (*See supra* note 4.)

■ Based on the record, it is fair to say that appellant did litigate the issue of whether he had been drinking on the day he was issued the aforementioned traffic citations. The same

cannot be said, however, for the other "ultimate fact" that appellant claims has been decided, i.e., that appellant "was not driving or attempting to drive" on the day in question.

The ALJ, contrary to appellant's claim, plainly did not rule that appellant had not "attempted to drive" on the day in question. She simply found that appellant "was pulled over on the shoulder and was not driving." Appellant contends that he cannot be found guilty of negligent driving or the other traffic charges because of this "not driving" finding. The ALJ's decision is ambiguous as to what she meant by the words "not driving." She may have meant that when Trooper Hagy approached appellant's tow truck he was, at that time, parked off the roadway and not operating his tow truck. It is very unlikely that the ALJ intended her "not driving" comment to convey the thought that appellant had not been driving his vehicle at any time here pertinent, which is the construction appellant wishes to place upon the words. Appellant's counsel told Judge Dwyer that he had produced witnesses at the hearing before the ALJ to show that the dispatcher sent appellant from Kensington, Maryland, to Frederick County and that appellant went to the spot he was sent. See supra note 4. Moreover, appellant's wife told the ALJ she followed her husband's tow truck (to Frederick County) due to the suspicious nature of the call the dispatcher had received and saw appellant "pulled off [the] road with emergency flashers on." The ALJ explicitly credited the testimony of appellant's wife and the other witnesses called by appellant. The aforementioned testimony would seem to suggest that appellant had been driving immediately prior to the time Trooper Hagy approached him.

It is, of course, possible that the ALJ meant that Trooper Hagy never observed appellant driving or that he had not been driving his tow truck at any time here pertinent. But to credit this theoretical possibility we would have to engage in conjecture as to the ALJ's meaning without any assurance that the "driving" issue was ever litigated before the ALJ. We are not permitted to engage in such speculation. In *Batson*, the Court instructed:

Under both federal and Maryland law, the principle of collateral estoppel should only be applied where the identical issue sought to be relitigated was actually determined in the earlier proceeding. *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210, 216-17 (1979); *Cassidy v. Board of Education,* 316 Md. 50, 57 [557 A.2d 227] (1989); *Mackall* [*v. Zayre Corp.,* 293 Md. 221, 228, 443 A.2d 98 (1982) ]. If anything is left to conjecture as to what was necessarily decided there can be no collateral estoppel. It must appear that the precise issue was raised and resolved in the former proceeding.

*Batson,* 325 Md. at 706, 602 A.2d 1191.

For the reasons discussed above, we hold that the only "ultimate fact" both litigated and determined by the ALJ was that appellant had not been drinking on the night of his arrest.

## THE NECESSITY PRONG

The third factor of the *Exxon* test is whether resolution of the issue was necessary to the agency's decision. A factual issue is necessary to the determination only if its resolution is required to support the judgment entered in the prior proceeding. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4421, at 192 (1981).

*Batson,* 325 Md. at 707-08, 602 A.2d 1191.

 We must decide if resolution of the issue of whether appellant had been drinking was necessary to the ALJ's decision. *Id.* at 707, 602 A.2d 1191. We hold that it was not.

The issues that an ALJ is empowered to decide in a show-cause hearing such as the one held in this case are governed by statute. Section 16–205.1(f)(7)(i) spells out the issues that an ALJ has the power to decide. These issues are:

1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while intoxicated, while under the influence of alcohol, while so far under the influence of any drug, any combination of drugs, or a combination of one

or more drugs and alcohol that the person could not drive a vehicle safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. Whether the police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed;

4. Whether the person refused to take the test;

5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.10 or more at the time of testing; or

6. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle.

§ 16.205.1(f)(7)(i).

As is clear under the terms of section 16–205.1(f)(7)(i)1, the ALJ is supposed to decide whether the police officer who stops a motorist had "reasonable grounds to believe the person was driving or attempting to drive while intoxicated," et cetera. The ALJ is also to decide if there was evidence that the motorist drove while under the influence of alcohol. See § 16–205.1(f)(7)(i)2. Here, if Trooper Hagy was believed, there was evidence that appellant had been drinking because appellant said he had consumed "four rum and Cokes." See note 4, supra. The ALJ never said whether she believed Trooper Hagy's testimony and never decided whether "there was evidence" that appellant "had used alcohol." Whether a motorist was driving or attempting to drive while using alcohol is not one of the questions the ALJ is authorized to answer. The ALJ needs to address the issues set forth in section 16–205.1(f)(7)(i)1–6 and no others. § 16–205.1(f)(8)(ii)(4). Under the Transportation Article, if a police officer has reasonable grounds to believe that a motorist has

driven or attempted to drive under the influence of alcohol, and if the officer has evidence that the motorist had used alcohol, it simply does not matter (for purposes of the Department of Motor Vehicle's revocation hearing) whether the motorist had, in fact, imbibed alcohol while driving, or attempting to drive.

A perfect defense at a license suspension hearing for failure to take a test to determine alcohol concentration is to prove that the arresting police officer did not warn the motorist accurately of the administrative consequences of a failure to take the test. *See* § 16–205.1(f)(8)(ii)(4). Appellant established this "perfect defense" at the administrative hearing seeking to suspend his license. The ALJ found that the appellant had not been accurately advised by Trooper Hagy of the consequences of his refusal. After making this finding, it simply did not matter whether appellant had, in fact, consumed alcohol on the night of his arrest.

For the foregoing reasons, we hold that the doctrine of collateral estoppel is inapplicable. The trial judge was correct when he refused to dismiss any of the charges pending against appellant.

### JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.