711 A.2d 1319

**Vincent B. JANES**

v.

**STATE of Maryland.**

**No. 104, Sept. Term, 1997.**

Court of Appeals of Maryland.

June 26, 1998.

James N. Papirmeister, Assigned Public Defender (Joseph F. Vallario, Jr., Assigned Public Defender, on brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

WILNER, Judge.

The issue before us is collateral estoppel—whether the State is precluded from prosecuting appellant, Vincent Janes, for driving while intoxicated and other related offenses because, in an earlier proceeding before the Motor Vehicle Administration (MVA), conducted to determine whether Janes's driver's license should be suspended by reason of his refusal to take a breath test, an administrative law judge determined that Janes was not driving the vehicle. We shall hold that the State is not precluded from proceeding with the criminal case.

## RELEVANT STATUTORY FRAMEWORK

There are three principal statutes bearing on Maryland's effort to keep drunk and drugged drivers off the State's roads, each being codified in the Transportation Article of the Maryland Code (1998 Repl.Vol.). The first— § 21–902—prohibits a person from driving or attempting to drive (1) while intoxicated (§ 21–902(a)(1)), (2) while intoxicated per se (§ 21–902(a)(2)),[1] (3) while under the influence of alcohol (§ 21–902(b)), (4) while so far under the influence of any drug, any combination of drugs, or a combination of a drug or drugs and alcohol that the person cannot drive a vehicle safely (§ 21–902(c)), or (5) while under the influence of a controlled dangerous substance (§ 21–902(d)). A violation of any of those provisions is a misdemeanor punishable by fine and imprisonment, the severity of the punishment depending on the offense and whether the person is a repeat offender. *See* § 27–101.

The second statute is § 16–205, which *permits,* but does not *require,* MVA to revoke or to suspend for varying periods the driver's license of a person convicted of an offense under § 21–902. Revocation is allowed for the more serious offenses—those under § 21–902(a) or (d)—and for a conviction under § 21–902(b) or (c) if, within the three years preceding the conviction, the person had been convicted of any combination of two or more violations of § 21–902. Otherwise, suspension for up to 60 days is allowed for a first conviction, and of up to 120 days for a second conviction. A revocation or suspension under § 16–205 can occur only after a criminal conviction; it is a collateral, civil consequence of the conviction.[2]

---

1. Section 11–127.1 defines "intoxicated per se" as having an alcohol concentration at the time of testing of 0.10 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath.

2. Additional, and to a large extent overlapping, consequences to a conviction flow from the "point" system maintained by MVA under title 16, subtitle 4 of the Transportation Article. A conviction of driving while intoxicated results in the assessment of 12 points; driving under the influence calls for eight points. § 16–402. If a person accumulates

The third statute is § 16–205.1, which provides for the suspension of a person's driver's license for either (1) refusing to take a test for the presence of alcohol or drugs upon request of a police officer having reasonable grounds to believe that the person has committed an offense under § 21–902, or (2) for taking a test that reveals an alcohol concentration of 0.10 or more. This is the statute principally at issue here. Unlike § 16–205, it is not tied to a criminal conviction but operates independently of both § 21–902 (and § 27–101) and § 16–205. An appreciation of the collateral estoppel argument made by appellant requires a deeper analysis of § 16–205.1.

The precursor of § 16–205.1 was first enacted in 1969, by 1969 Md. Laws, ch. 158. Under that law, each applicant for the issuance or renewal of a driver's license had to sign a statement under oath or affirmation consenting (1) to take a chemical test to determine the alcoholic content of his or her blood, breath, or urine if detained upon suspicion of driving while intoxicated or impaired by alcohol, and (2) to having his or her driver's license suspended for up to 60 days for refusing to take the test. If the person, upon being detained by an officer upon reasonable suspicion that the person was driving while intoxicated or impaired, refused to take the test upon the officer's request, MVA had the authority, after a hearing upon 15 days notice, to suspend the person's driver's license for up to 60 days. Suspension was discretionary, not mandatory, however. With a number of amendments added over the

eight points during a two-year period, MVA is required to suspend the person's driver's license for a minimum period of two days and possibly up to 24 months. § 16–404. Upon the accumulation of 12 points, MVA is directed to revoke the license. *Id.* MVA has some discretion under this program as well, however. If suspension or revocation would adversely affect the person's employment, MVA may decline to take that action, § 16–405, and, if suspension or revocation is otherwise mandated because of a conviction under § 21–902, MVA may modify that penalty in favor of the installation of an ignition interlock system designed to assure that the person cannot drive while under the influence of alcohol. § 16–404.1.

years, that law remained in effect until replaced by the 1989 law now before us. *See* 1989 Md. Laws, ch. 284.

Section 16–205.1(a)(2) now provides, in relevant part, that any person "who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented ... to take a test if the person should be detained on suspicion of driving [in violation of § 21–902]." [3] Notwithstanding the statutorily implied consent, § 16–205.1(b)(1) makes clear that a person "may not be compelled to take a test." If the person refuses to take the test, however, § 16–205.1(b) *requires* MVA to suspend the person's driver's license for 120 days, if it is the person's first offense, and for one year, if it is the person's second or subsequent offense. The *mandated* suspension, for the longer period of time, was one of the major changes effected by the 1989 law. Another significant change made by the 1989 law was a mandated suspension if the person takes the test and the test reveals an alcohol concentration of 0.10 or more, but the suspensions in that situation are for shorter periods (45 days for a first offense, 90 days for a subsequent offense).

Section 16–205.1 goes on, at considerable length, to set forth procedures and requirements relating to the test and to the consequences both of refusing to take it and of taking and failing it. With an exception not relevant here, § 16–205.1(b)(2) provides that, if a police officer stops or detains "any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle [in violation of § 21–902]," the officer must (1) detain the person, (2) request that the person submit to a test, and (3) advise the person of the administrative sanctions imposed, both for refusing to take the test and for a test result indicating an alcohol concentration of 0.10 or more. If the

---

3. Section 16–205.1(a)(2) actually repeats the language used in § 21–902 to describe four of the five offenses stated there, the only one excluded being driving while intoxicated per se. For the sake of brevity, here and in citing to other similar provisions in § 16–205.1, we shall not repeat that language but simply note a reference to § 21–902.

person refuses to take the test, or takes a test that reveals an alcohol concentration of 0.10 or more, the law imposes seven additional duties on the officer: (1) to confiscate the person's driver's license; (2) acting on behalf of MVA, to serve an order of suspension on the person; (3) to issue the person a temporary license to drive; (4) to inform the person that the temporary license allows the person to drive for only 45 days; (5) to inform the person of his or her right to request a hearing before MVA "to show cause why the driver's license should not be suspended," (6) to advise the person of the administrative sanctions that will be imposed if the person refuses to request or attend such a hearing or upon an adverse finding by the hearing officer; and (7) within 72 hours after issuing an order of suspension, to send the confiscated license, a copy of the order, and a sworn statement to MVA.

The sworn statement required by § 16–205.1(b)(2) must contain three assertions—that the officer had reasonable grounds to believe that the person had been driving in violation of § 21–902, that the person either refused to take a test when requested by the officer or submitted to a test that indicated an alcohol concentration of 0.10 or more, and that the person was advised of the sanctions for refusing to take the test and for taking and failing the test. Section 16–205.1(f) permits a person, within certain time limits, to submit a written request for hearing before an administrative law judge acting as an MVA hearing officer.

If a hearing is not timely requested, MVA is required to impose the mandated suspension. If a hearing is timely requested, subject to long and detailed provisions regarding postponements, one must be held within 45 days after receipt of the request. The hearing is to be conducted as a contested case hearing under the Administrative Procedure Act.[4] Section 16–205.1(f)(7) limits the issues, however, to the following:

---

4. Section 16–205.1(f)(7)(i) provides that, at a hearing, a person has the rights described in § 12–206 of the Transportation Article. Section 12–206 requires a hearing under the Motor Vehicle Law to be conducted in

"1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive [in violation of § 21–902];

2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. Whether the police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed . . .;

4. Whether the person refused to take the test;

5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.10 or more at the time of testing; or

6. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle."

Although the person charged may present evidence and may compel testimony by subpoena, the sworn statement of the officer, submitted under § 16–205.1(b)(2)(vii), is prima facie evidence of a test refusal. Section 16–205.1(f)(8) requires MVA to suspend the license, after a hearing, if (1) "[t]he police officer who stopped or detained the person had reasonable grounds to believe the person was driving or attempting to drive [in violation of § 21–902]"; (2) there was evidence of the use by the person of alcohol, drugs, or a combination of drugs and alcohol; (3) "[t]he police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed"; and (4) the person refused to take the test or took and failed the test.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant, his wife, Diane, and his friend, Ronald Burke, spent the midnight hours of December 5—6, 1996, drinking at

accordance with Title 10, subtitle 2 of the State Government Article. That subtitle sets forth the law governing contested cases.

a tavern in Charles County. Sometime after 1:00 a.m., they left the tavern in two vehicles. Appellant and Burke were in a van; they were followed by Ms. Janes. Not long after they departed the tavern, the van smashed into a telephone pole. Trooper J.A. Barth, of the Maryland State Police, arrived at the scene of the accident at 1:23 a.m., approximately five to ten minutes after the accident occurred. Personnel from the county fire department and officers from the Sheriff's Office were already present.

Trooper Barth found Burke unconscious in the front passenger seat of the van. Janes was sitting on the rear bumper with the keys to the vehicle in his hand. He smelled of alcohol, had bloodshot eyes and slurred speech, could not stand without assistance, and failed all of the field sobriety tests that Barth administered. At some point, Burke regained consciousness and informed one of the sheriff's deputies, who informed Barth, that Janes had been driving the van when the accident occurred. Barth placed Janes under arrest and transported him to a police station to take a breath test. In his police report, Trooper Barth stated that Janes refused to take the test, although in testimony before the administrative law judge, he said that Janes was too intoxicated to give a sufficient breath sample. In either event, pursuant to § 16–205.1, Trooper Barth apparently confiscated Janes's driver's license and, on behalf of the MVA, served on him a 45–day suspension of the license. Barth issued six citations, charging Janes, among other things, with driving while intoxicated or under the influence of alcohol, violating a license restriction, and driving with alcohol in his blood in violation of a court order. The charges were filed in the District Court on December 6, 1996.

A hearing was initially scheduled before the MVA on February 19, 1997, presumably at Janes's request, to determine whether Janes's driver's license should be suspended because of his refusal to take the breath test. That hearing was postponed to March 28, in order to allow the State to summons Trooper Barth to testify. The March 28 hearing also was postponed when Trooper Barth failed to appear and it

was determined that he had not been properly summoned. The hearing finally was conducted on May 8. Trooper Barth, who was the State's only witness, testified as indicated above. Janes's sole defense was that he was not driving the van when the accident occurred—that Burke had been the driver. He testified to that effect, claiming that, when leaving the tavern, he asked Burke to drive the van. Burke, who said that he had no recollection of telling anyone that Janes had been the driver, corroborated Janes's story. Ms. Janes also testified. She said that she arrived at the scene just after the accident occurred, that she pulled her husband out of the front passenger's seat, and that she attempted to pull Burke from the driver's seat but was unable to do so because the driver's door could not be opened. Although acknowledging that Burke had, indeed, told Trooper Barth that Janes had been driving, she contended that both she and her husband had told him that that was not the case.

In light of this conflicting testimony, and noting that the only witnesses to the accident were Janes and Burke, the administrative law judge found from their testimony that Janes "was not driving his vehicle when the accident occurred on December 6, 1996." [5] That finding, he held, precluded any sanction under § 16–205.1. The ALJ reasoned that the law allowing suspension for refusal to take a test stemmed from § 16–205.1(a)(2)—the implied consent law—which applied only to a person "who drives or attempts to drive a motor vehicle," and that, as Janes had not been driving the van, he was not subject to the sanction. That ruling was filed on June 4, 1997. MVA acquiesced in the ruling and did not seek judicial

---

5. Neither the tape recording of the testimony taken at the hearing nor a transcript of that testimony is in the record before us. All that we have bearing on the evidence presented are the written findings and conclusions of the administrative law judge. There is no discussion in those findings of how Janes came to be in possession of the keys, why he submitted to the field sobriety tests, and why he attempted (though apparently without success) to take the breath test, if he was not the driver of the van. The ALJ obviously gave no weight to the fact that Burke was found in the passenger's seat when Trooper Barth arrived.

review.[6]

The criminal case, filed December 6, 1996, was set for trial in the District Court on March 13, 1997, but was postponed to May 22 at the request of defense counsel. On May 22, Janes prayed a jury trial, thereby transferring the case to the Circuit Court for Charles County. On August 5, 1997—the date set for trial in the circuit court—Janes moved to dismiss the charges on the ground that the ALJ's finding that Janes was not the driver precluded the State from relitigating that issue in the criminal case. He relied on *Bowling v. State*, 298 Md. 396, 470 A.2d 797 (1984) as authority for that proposition. Caught by surprise, the State argued in response that that finding by the ALJ was mere *dicta*, not necessary to the result he reached. Although the State's argument in this regard was premised on the assertion that the ALJ could have denied a suspension upon a finding that Janes's failure to provide a sufficient sample of breath did not constitute a refusal to take the test (*see Borbon v. MVA*, 345 Md. 267, 691 A.2d 1328 (1997)) and that he did not, therefore, have to reach the issue of whether Janes was actually driving the van, the court found a different basis for not applying collateral estoppel. Looking at § 16-205.1(f)(7), the court observed that the issue before the ALJ was *not* whether Janes was driving but whether the officer had reasonable grounds for believing that he was, and that a finding on the ultimate question of whether he was the driver was beyond the ALJ's authority. For that reason, it denied the motion to dismiss.

On the premise that collateral estoppel, applied to preclude relitigation in a criminal case of an issue previously decided in an administrative agency proceeding, constituted a claim of Constitutional double jeopardy, Janes filed an immediate appeal from the interlocutory ruling. *See Neal v. State*, 272 Md.

6. Section 10-222(a)(2) of the State Government Article, which is part of the Administrative Procedure Act, provides that "[a]n agency, including an agency that has delegated a contested case to the Office [of Administrative Hearings], is entitled to judicial review of a decision as provided in this section if the agency was a party before the agency or the Office."

323, 322 A.2d 887 (1974); *Bowling v. State, supra,* 298 Md. 396, 401 n. 4, 470 A.2d 797, 799 n. 4. We granted *certiorari* before resolution of the appeal in the Court of Special Appeals.

## *DISCUSSION*

 Collateral estoppel, or issue preclusion, began life and retains life as a common law doctrine. A common and well-established articulation of the doctrine is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Murray International v. Graham,* 315 Md. 543, 547, 555 A.2d 502, 504 (1989), quoting from RESTATEMENT (SECOND) OF JUDGMENTS, § 27 (1982). The functions of this doctrine, and the allied doctrine of *res judicata,* are to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions. *Graham, supra,* 315 Md. at 547, 555 A.2d at 504, citing *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210, 217 (1979). Although originating in civil litigation, the common law doctrine has long been applied to preclude the relitigation in a criminal case of an issue previously resolved by a valid and final judgment entered by a court in either a civil or criminal case. *See Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970); *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), *overruled on other grounds, Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Bowling v. State, supra,* 298 Md. at 401, 470 A.2d at 799.

 In *Ashe v. Swenson,* the Supreme Court held the common law doctrine, as it had been applied in criminal cases under Federal criminal law, to be "embodied in the Fifth Amendment guarantee against double jeopardy," 397 U.S. at 445, 90 S.Ct. at 1195, 25 L.Ed.2d at 476, and thus applicable through the Fourteenth Amendment as a constitutional limitation in State court proceedings. *See Bowling v. State, supra,*

298 Md. at 401, 470 A.2d at 799; *Ferrell v. State,* 318 Md. 235, 241, 567 A.2d 937, 940, *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990). Although the Maryland Constitution does not contain a counterpart to the Fifth Amendment prohibition against double jeopardy, that prohibition has long existed as a matter of Maryland common law. *Couser v. State,* 256 Md. 393, 260 A.2d 334 (1970); *Neal v. State, supra,* 272 Md. at 327, 322 A.2d at 889; *Middleton v. State,* 318 Md. 749, 569 A.2d 1276 (1990); *State v. Griffiths,* 338 Md. 485, 659 A.2d 876 (1995). In Maryland, therefore, collateral estoppel is applicable in criminal proceedings on three bases—as an independent common law doctrine, as a component of Fifth Amendment double jeopardy, and as a component of Maryland common law double jeopardy. Because our common law prohibition against double jeopardy, on the one hand, has generally been construed consistently with the Federal Constitutional prohibition,[7] but, on the other, is subject to revision by the General Assembly [8], we shall not distinguish between them in this case and instead, for convenience, view collateral estoppel in only two contexts—as an independent common law doctrine and as an aspect of double jeopardy.

Both parties recognize the dual nature of this doctrine. Relying on cases dealing with collateral estoppel as a common law doctrine, Janes asserts that preclusion of the criminal proceeding may be founded on the ruling of an administrative agency and is not limited to judgments entered by a court. In

---

**7.** In *Thomas v. State,* 277 Md. 257, 267 n. 5, 353 A.2d 240, 246 n. 5 (1976), we observed: "Of course, since *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), holding that the Double Jeopardy Clause of the Fifth Amendment is applicable to state prosecutions, the Supreme Court decisions are controlling in cases presenting double jeopardy issues." *See also Whittlesey v. State,* 326 Md. 502, 505 n. 1, 606 A.2d 225, 226 n. 1 (1992). Although this Court is not bound by Supreme Court decisions in fashioning and interpreting the Maryland common law, as a matter of simple pragmatism, we have followed those decisions in shaping and applying the common law of double jeopardy so that the State and Federal rights remain consistent.

**8.** *See State v. Jones,* 340 Md. 235, 266, 666 A.2d 128, 143 (1995); *Ford v. State,* 237 Md. 266, 205 A.2d 809 (1965).

*United States v. Utah Constr. Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 661 (1966), the Supreme Court observed that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." In *Batson v. Shiflett,* 325 Md. 684, 602 A.2d 1191 (1992), we noted that the same principle had been applied to collateral estoppel and, accordingly, held that "agency findings made in the course of proceedings that are judicial in nature should be given the same preclusive effect as findings made by a court." *Id.* at 702, 602 A.2d at 1200. In deciding whether an administrative agency decision should be given preclusive effect, we adopted the three-prong test first enunciated in *Exxon Corp. v. Fischer,* 807 F.2d 842, 845–46 (9th Cir.1987):

"(1) whether the [agency] was acting in a judicial capacity; (2) whether the issue presented to the ... court was actually litigated before the [agency]; and (3) whether its resolution was necessary to the [agency's] decision."

*Batson, supra,* 325 Md. at 701, 602 A.2d at 1200.

The State has a triple response to the proposition that, under a *Bowling/Batson* analysis, the administrative determination that Janes was not the driver precludes the criminal prosecution. First, citing *State v. Jones,* 340 Md. 235, 666 A.2d 128 (1995), it contends that double jeopardy-based collateral estoppel does not arise from proceedings under § 16–205.1. Second, although it acknowledges that the common law doctrine of collateral estoppel may arise from administrative agency decisions, it urges that, in this instance, the common law has been overridden by statute—that § 16–205.1(*l* ) manifests a legislative declaration that the administrative and criminal proceedings are entirely separate and that the decision in one does not preclude prosecution of the other. Finally, it presses the point made by the circuit court, that the administrative law judge's finding was mere *dicta,* not necessary to his decision and, indeed, that the issue of whether Janes was actually driving the van was not really before the

ALJ. Janes, of course, has a different view on each of those responses, although he does not address the effect of *State v. Jones, supra.*

The issue presented by Janes, though new to Maryland, despite its latency for nearly 30 years, has been addressed elsewhere and was recently addressed by the Court of Special Appeals in *Reid v. State,* 119 Md.App. 129, 704 A.2d 473 (1998). As we shall see, there is some division among courts on the general question of whether a favorable finding by an administrative agency can ever serve, on collateral estoppel grounds, to preclude a subsequent criminal prosecution involving the same issue. The courts that have considered the question in the context presented here, however—whether a favorable ruling in an administrative proceeding similar to that conducted under § 16–205.1 will bar a subsequent criminal prosecution for driving under the influence of alcohol or while intoxicated—have universally rejected the kind of argument made by Janes. Different rationales have been applied in reaching that decision.

### Application of Double Jeopardy–Based Collateral Estoppel

In *State v. Jones, supra,* 340 Md. 235, 666 A.2d 128, the defendant was arrested for driving while intoxicated. He consented to take the breath test, which revealed an alcohol concentration well in excess of 0.10. As a result, in August, 1994, an MVA administrative law judge, acting under § 16–205.1, suspended his driver's license for 30 days. In November, 1994, Jones was brought to trial in the district court and convicted on the criminal charge. On appeal to the circuit court, he moved to dismiss the charge on double jeopardy grounds. The circuit court found merit in his argument and granted his motion. We reversed.

It is important to understand the context in which the double jeopardy issue was presented in *Jones.* As Chief Judge Murphy pointed out, Jones's argument was founded solely on the dual punishment aspect of double jeopardy: "Since neither party contends that the administrative suspen-

sion of Jones's license constituted a 'prosecution,' the imposition of criminal sanctions against Jones for driving while intoxicated violates the Double Jeopardy Clause only if it constitutes a second punishment." *Id.,* 340 Md. at 242, 666 A.2d at 131. The discussion thereafter was whether, under the holdings of *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the suspension by MVA constituted a "punishment" for purposes of double jeopardy and, for that reason, precluded a criminal prosecution intended to lead to a further punishment. We concluded that the administrative sanction did not constitute a punishment for double jeopardy purposes and therefore did not foreclose the criminal prosecution.

■ Collateral estoppel is not required to avoid a multiple punishment problem and does not invoke that branch of the double jeopardy doctrine. It springs, rather, from that aspect of double jeopardy precluding multiple prosecutions. *See Ashe v. Swenson, supra,* 397 U.S. at 445–46, 90 S.Ct. at 1195, 25 L.Ed.2d at 476–77. Accordingly, neither the rationale nor the holding in *State v. Jones* serves as precedent in this case. As *Ashe v. Swenson* makes clear, the collateral estoppel aspect of double jeopardy is intended to preclude a defendant from having to relitigate an issue of fact or law that has already been decided in his or her favor. If otherwise applicable, double jeopardy-based collateral estoppel would apply whether or not a sanction or punishment has been imposed; indeed, in most instances, it comes into play when the defendant has prevailed in the earlier proceeding, at least on the issue in question. *See Powers v. State,* 285 Md. 269, 401 A.2d 1031, *cert. denied,* 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979); *Bowling v. State, supra,* 298 Md. 396, 470 A.2d 797.

The State's point, that the double jeopardy aspect of collateral estoppel cannot be founded on an administrative law judge's decision under § 16–205.1, is, however, correct. In

*Batson v. Shiflett, supra,* 325 Md. 684, 602 A.2d 1191, based on a well-established rule in the Federal system, we held that the independent common law doctrine of collateral estoppel may preclude relitigation in a *civil* action of an issue decided in a prior administrative proceeding (although in that case, we found the doctrine inapplicable). In *Bowling v. State, supra,* 298 Md. 396, 470 A.2d 797, we concluded that both the common law doctrine and double jeopardy-based collateral estoppel may serve to preclude the relitigation in a criminal case of an issue decided in the defendant's favor *by a court* in a prior civil action. We are aware of no case, however, and none has been cited to us, clearly holding that the State is precluded by double jeopardy-based collateral estoppel from prosecuting a criminal case because of an earlier determination by an administrative agency.

The issue of double jeopardy-based collateral estoppel has been raised in a number of cases similar to this one, and it has consistently been rejected. *See Reid v. State, supra,* 119 Md.App. 129, 704 A.2d 473; *State v. Barlow,* 30 Conn.App. 36, 618 A.2d 579 (1993), following *State v. Fritz,* 204 Conn. 156, 527 A.2d 1157 (1987); *State v. Higa,* 79 Hawaiʻi 1, 897 P.2d 928 (1995); *State v. Arnold,* 593 So.2d 1293 (La.App.1991), *writ denied,* 594 So.2d 1305 (La.1992); *State v. Warfield,* 854 S.W.2d 9 (Mo.App.1993); *State v. Hoyt,* 922 S.W.2d 443 (Mo. App.1996); *State v. Bishop,* 113 N.M. 732, 832 P.2d 793 (App.1992); *State v. Cassady,* 140 N.H. 46, 662 A.2d 955 (1995); *State v. Young,* 249 Neb. 539, 544 N.W.2d 808 (1996); *State v. Aguilar,* 947 S.W.2d 257 (Tex.Cr.App.1997); *Jones v. City of Lynchburg,* 23 Va.App. 167, 474 S.E.2d 863 (1996). The two Missouri cases involved almost the same situation as that presented here—at the administrative license-suspension proceeding, the defendant had been found not to be the driver, yet that did not preclude a subsequent prosecution for driving while intoxicated. *State v. Warfield, supra,* 854 S.W.2d at 10; *State v. Hoyt, supra,* 922 S.W.2d at 447.

The courts have applied different rationales in support of their conclusions. Some have taken the broad view that double jeopardy-based collateral estoppel simply does not

arise from the finding of an administrative agency. *See State v. Warfield, supra,* 854 S.W.2d at 11: "Missouri cases hold that, for collateral estoppel purposes, no relationship exists between a determination of fact made in a criminal case and a determination of fact made in an administrative proceeding under [the Missouri counterpart to § 16–205.1]"; *State v. Cassady, supra,* 662 A.2d at 958: "Application of the doctrine of collateral estoppel is not constitutionally mandated, however, when the first proceeding is civil, rather than criminal.... We conclude that the administrative review hearing was a civil proceeding, and therefore, that application of the doctrine of collateral estoppel is not constitutionally mandated."

Other courts have found more particular reasons not to apply double jeopardy-based collateral estoppel to rulings made in § 16–205.1 type proceedings. Some have found no privity between the prosecutor in the criminal case and the motor vehicle licensing agency, noting their different functions and agendas. Others have stressed the different issues addressed in the two proceedings, the fact that the administrative proceeding is intended to be informal and summary, and the difficulties that would ensue if collateral estoppel *were* applied. *See Reid v. State,* supra, 119 Md.App. 129, 704 A.2d 473; *State v. Barlow, supra,* 618 A.2d at 581–82; *State v. Higa, supra,* 897 P.2d at 935; *State v. Aguilar, supra,* 947 S.W.2d 257. The Illinois Supreme Court summarized well the consequence of applying collateral estoppel in the manner urged by Janes:

"Given even the possibility that the results of a summary suspension hearing would act as collateral estoppel, the State would likely find it necessary to treat the suspension hearing as an integral part of the criminal trial rather than merely an administrative device at the disposal of the defendant in which the defendant can halt the otherwise automatic suspension of his driving privileges. The process would seldom, if ever, be swift. Law enforcement officers would be required to testify regardless of whether the defendant subpoenaed them. The State would also be required to present witnesses to establish that defendant

was in fact driving and was doing so while impaired, and experts will often be required to testify concerning the accuracy of the various chemical testing devices."

*People v. Moore,* 138 Ill.2d 162, 149 Ill.Dec. 278, 282, 561 N.E.2d 648, 652 (1990); *see also State v. Bishop, supra,* 832 P.2d at 796.

In addition to the cases cited above, specifically rejecting a double jeopardy-based collateral estoppel argument, there are a number of cases in which such a rejection is implicit from the refusal of the court to apply collateral estoppel on any basis to preclude a criminal prosecution for driving while intoxicated or while under the influence of alcohol. *See Gikas v. Zolin,* 6 Cal.4th 841, 25 Cal.Rptr.2d 500, 863 P.2d 745 (1993); *People v. Moore, supra,* 149 Ill.Dec. 278, 561 N.E.2d 648; *State v. MacLean,* 560 A.2d 1088 (Me.1989); *State v. O'Rourke,* 114 N.C.App. 435, 442 S.E.2d 137 (1994) (no privity between prosecutor and Commissioner of Motor Vehicles); *State v. DeWhitt,* 82 Or.App. 55, 727 P.2d 151 (1986); *People v. Lalka,* 113 Misc.2d 474, 449 N.Y.S.2d 579 (City Ct.1982). Compare *Brower v. Killens,* 122 N.C.App. 685, 472 S.E.2d 33 (1996), holding that a finding in the criminal case that the police did not have probable cause to arrest the defendant precluded relitigation of *that* issue in a subsequent administrative proceeding.

■ The concern underlying the decisions noted above is that, in most instances, § 16–205.1–type proceedings do not sufficiently resemble court proceedings, even though the agency acts in a quasi-judicial capacity, to serve as the basis of a constitutional estoppel. They are ordinarily informal in nature, intended to provide minimally necessary due process before temporarily suspending an important privilege, and, as noted, the State is normally not represented by counsel and often offers no evidence beyond the hearsay reports of the officer and the toxicologist. Upon the authority noted, and in the absence of any to the contrary, we conclude that double jeopardy-based collateral estoppel does not preclude the pros-

ecution of a case brought under § 21–902 because of a ruling, finding, or decision made in a proceeding under § 16–205.1.

## Common Law Collateral Estoppel

As we have noted, there is some division of authority as to whether, under common law principles, the resolution of an issue of law or fact by an administrative agency can preclude the relitigation of that issue in a subsequent criminal proceeding. Courts in California and Michigan have applied collateral estoppel to preclude a prosecution for welfare fraud after an administrative agency determined that there was no fraud— that the father of the children did not live in the defendant's home. *See People v. Sims*, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982); *People v. Watt*, 115 Mich.App. 172, 320 N.W.2d 333 (1982). *See also United States v. Abatti*, 463 F.Supp. 596 (S.D.Cal.1978), dismissing a tax evasion case based on a ruling of the Tax Court that there was no deficiency. Other courts have reached a different conclusion, ruling either that "cross-over" collateral estoppel does not apply between administrative and criminal proceedings or that, while it might in some circumstances, it does not generally. *See* Debra E. Wax, Annotation, *Doctrine of Res Judicata or Collateral Estoppel as Barring Relitigation in State Criminal Proceedings of Issues Previously Decided in Administrative Proceedings*, 30 A.L.R.4th 856 (1984 and Supp.1997). *See also United States v. Alexander*, 743 F.2d 472 (7th Cir.1984); *United States v. Lasky*, 600 F.2d 765 (9th Cir.1979); *United States v. Payne*, 2 F.3d 706 (6th Cir.1993). It is of some interest to note that, following the ruling of the California court in *People v. Sims*, the California legislature enacted a statute to make clear that collateral estoppel did not preclude the prosecution of defendants for driving while intoxicated or while under the influence based on findings made in § 16–205.1–type proceedings. *See Gikas v. Zolin, supra*, 25 Cal. Rptr.2d at 506–07, 863 P.2d at 751–52.

We need not determine here whether common law collateral estoppel would operate to preclude a criminal prosecution under § 21–902 based on an MVA finding in a § 16–

205.1 proceeding, for the General Assembly has made clear through the enactment of § 16–205.1(*l* )(1) that criminal proceedings under § 21–902 and administrative proceedings under § 16–205.1 are independent of one another and that the findings made in one do not affect the other. That decision was deliberate and must be given effect, whatever the common law might otherwise be.[9]

We traced some of the legislative history of § 16–205.1 in *Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 597 A.2d 939 (1991), noting that it emanated from a legislatively-created Task Force on Drunk and Drugged Driving. Among the several matters studied by that task force were (1) an *administrative per se* law, making both the refusal to take an alcohol test and the taking of such a test that revealed 0.10 or greater alcohol concentration an administrative offense that would lead to the rapid *and mandated* suspension of the offender's driver's license, and (2) a *criminal per se* law, that would make driving with an alcohol concentration of 0.10 or more a *per se* criminal offense. *See* TASK FORCE ON DRUNK AND DRUGGED DRIVING MINUTES, September 13, 1988, September 27, 1988, October 13, 1988. When juxtaposed with existing laws on driving while intoxicated or driving under the influence of alcohol, those proposed laws raised a number of *res judicata*, collateral estoppel, double jeopardy, and merger concerns, and both the Staff to the Task Force and the Attorney General's Office were asked to address those issues. The principal concern emanated from the proposed mandated suspension resulting from a test result of 0.10 or greater, rather than

---

**9.** There being no decision of this Court prior to 1989 that would have clearly made common law collateral estoppel applicable to a prosecution under § 21–902 based on a finding by MVA in a license revocation proceeding, § 16–205.1(*l*)(1) cannot be regarded as actually modifying the common law, but rather as establishing a principle of statutory construction contemporaneously with the enactment of the statute. As we held more than 70 years ago in *Motor Co. v. State*, 147 Md. 232, 236, 127 A. 637, 638 (1925), quoting from *Farmers' Bank v. Hale*, 59 N.Y. 53, the Legislature may "declare in the body of the act the construction to be placed thereon, and the courts are bound by such construction, and all other parts of the act must yield." *See also Legum v. Carlin*, 168 Md. 191, 177 A. 287 (1935).

from the suspension following a refusal to take the test, but the latter was also viewed as a potential problem.

In November, 1988, the Department of Legislative Reference submitted a memorandum addressing, among other things, the relationship between an administrative per se offense and a violation of § 21–902. The memorandum noted, in that regard, that collateral estoppel and *res judicata* "may frustrate the regulatory purpose of the legislative scheme under certain circumstances (particularly when the state fails to prove its case in the first proceedings) and should be considered when structuring the legislative scheme." *See* Memorandum from William Dickerson to Members of the Drunk & Drugged Driving Task Force, ADMINISTRATIVE SANCTIONS FOR DRUNK AND DRUGGED DRIVING, November 22, 1988. Citing *Bowling v. State, supra,* 298 Md. 396, 470 A.2d 797, and assuming that the administrative proceeding would normally precede the criminal trial, Mr. Dickerson warned that, "[i]f in some context an administrative determination is held to be the equivalent of a final judgment then an accused party prevailing at the administrative level with the lesser burden of proof could use the determination to collaterally estop relitigation of a necessarily determined issue in a later criminal prosecution." Dickerson, *supra,* at 10. He noted as well that "[i]n the unlikely event the criminal proceeding precedes the administrative hearing any determination of an issue at the criminal stage meeting the aforementioned requirements for collateral estoppel would foreclose relitigation of an identical issue at the administrative level." *Id.*

The Assistant Attorney General representing the MVA, in a memorandum to the Task Force, addressed some of the collateral estoppel issues. Her particular concern was whether a dismissal, *nol pros*, stet, or acquittal in the criminal proceeding could affect a suspension previously ordered by MVA—the reverse of the situation presently before us—and she concluded that, because of the different burdens of proof, it would not. She opined that, in any event, there was no privity between the prosecutor and MVA and that the issues in the two proceedings were not the same. In that latter

regard, she noted that, at the administrative proceeding, the issue was solely whether the person refused a proper request to take the test or took a test showing an alcohol concentration of 0.10 or greater, and that neither was required to be proved in the criminal proceeding. *See* Memorandum from Ann E. Singleton, Assistant Attorney General, to Peter J. Cobb, Task Force on Drunk and Drugged Drivers, LEGAL IMPLICATIONS OF ADMINISTRATIVE PER SE PROVISIONS, February 3, 1989.

Aware of the problem, and apparently not content to rest entirely on the Assistant Attorney General's assurances, the Legislature dealt with it expressly. As of July, 1988, 23 States and the District of Columbia had enacted administrative *per se* statutes. GENERAL ASSEMBLY OF MARYLAND REPORT OF THE TASK FORCE ON DRUNK AND DRUGGED DRIVING 1988 INTERIM, at 12. There was also in existence the 1987 edition of the Uniform Vehicle Code, prepared by the National Committee on Uniform Traffic Laws and Ordinances, which contained an implied consent and administrative *per se* law. Except for the Arizona, Colorado, Indiana, and Maine laws, neither the existing statutes in other States nor the Uniform Vehicle Code dealt specifically with the *res judicata* or collateral estoppel issues that might arise from the relationship between the license suspension proceeding and the criminal case, and, although the Task Force warned the General Assembly of the problem, the bill proposed by the Governor to implement the Task Force recommendations (House Bill 556), as initially introduced, also was silent on those issues. In the course of the legislative process, however, the General Assembly addressed the preclusion concerns (1) by enumerating, and circumscribing, the issues to be considered at the MVA hearing, and (2) by adding a provision, now codified as § 16–205.1(*l*)(1), that "[t]he determination of any facts by the [MVA] is independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence."

To meet the particular concern of the Assistant Attorney General of whether a ruling in the criminal case favorable to the defendant might impact on the ability of MVA to order or

continue in effect a suspension, the Legislature added to subsection (*l*) the further provision, subsection (*l*)(2), that the disposition of criminal charges may not affect any suspension imposed under § 16–205.1. Section 16–205.1(*l*)(1), however, operates in both directions and is not limited in scope only to suspensions ordered upon a test result of 0.10 or more. *See State v. Hoyt, supra,* 922 S.W.2d 443; *State v. Warfield, supra,* 854 S.W.2d 9. The unmistakable intent behind that provision was to make clear that (*1*) whatever issues were addressed and decided at an MVA hearing under § 16–205.1, the findings, rulings, and decisions made by MVA would have no effect on any subsequent criminal proceedings under § 21–902, and (2) conversely, a judgment entered in the criminal case would have no effect on the administrative proceeding or on any order entered in such a proceeding.

In light of these conclusions, we need not resolve here the narrower issue raised by the State—that the question before the MVA was not whether Janes was, in fact, the driver of the van but only whether Trooper Barth had reasonable grounds to believe that he was, and that, accordingly, the ALJ's finding that Janes was not the driver was gratuitous and, for that reason, cannot serve as the basis for collateral estoppel.

ORDER DENYING MOTION TO DISMISS AFFIRMED; CASE REMANDED TO CIRCUIT COURT FOR CHARLES COUNTY FOR FURTHER PROCEEDINGS; APPELLANT TO PAY THE COSTS.